THE HONORABLE ROBERT S. LASNIK

1
2
3
4
5
6
7
8
9
10
11
12
13                   UNITED STATES DISTRICT COURT
14                  WESTERN DISTRICT OF WASHINGTON
15                            AT SEATTLE
16
17
18   FULTZ, et al.,                        No. CV 08-00343 RSL
19
20                     Plaintiffs,          NATIONAL CITY DEFENDANTS'
21                                          MOTION TO DISMISS STATE-LAW
22         v.                               CLAIMS
23
24   WORLD SAVINGS AND LOAN                 NOTE ON MOTION CALENDAR:
25   ASSOCIATION, et al.,                   MAY 23, 2008
26
27                     Defendants.
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL)

67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     PLAINTIFFS' ALLEGATIONS ..................................................................... 1

III.    ARGUMENT ................................................................................................. 2

        A.    Standard for a Motion to Dismiss ........................................................ 2

        B.    Plaintiffs' State-Law Claims Are Preempted ........................................ 2

              1.    A Unique Standard for Preemption Governs Suits Against National
                    Banks ....................................................................................... 3

              2.    Plaintiffs' Claims Are Barred Because Federal Statutes and
                    Regulations Preempt the Relevant Field .................................... 4

              3.    Plaintiffs' Claims Are Also Barred on the Basis of Conflict
                    Preemption ............................................................................... 7

                    a.    Plaintiffs' claims—which amount to an attack on fees,
                          interest rates, and disclosures in conjunction with loans—
                          are conflict preempted .................................................... 8

                    b.    Plaintiffs cannot avoid preemption through artful pleading ........ 10

        C.    Even if Plaintiffs' State-Law Claims Were Not Preempted, They Fail to
              State a Claim Upon Which Relief May Be Granted ........................... 12

              1.    Plaintiffs' Fraud Claims Fail to Meet Rule 9's Heightened Pleading
                    Standard ................................................................................. 12

              2.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress
                    Fails to State a Claim Upon Which Relief May Be Granted ............. 14

              3.    Plaintiffs' Breach of Fiduciary Duty Claim Fails to State a Claim
                    Upon Which Relief May Be Granted ........................................ 16

              4.    Plaintiffs' CPA Claim Fails to State a Claim Upon Which Relief
                    May Be Granted ...................................................................... 17

IV.     CONCLUSION ............................................................................................ 18

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – i
67804-0001/LEGAL14217301.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## I.    INTRODUCTION

The complaint filed by plaintiffs Patrick Fultz and Laurel Schwartz sets forth four state-law claims against Defendants National City Bank and National City Mortgage Co. (collectively, "National City").  Each should be dismissed because plaintiffs have failed to state a claim upon which relief may be granted.  The claims are preempted by federal law and, moreover, have been inadequately pleaded.

National City respectfully requests that the Court dismiss plaintiffs' claims pursuant to the Supremacy Clause, U.S. Const. art. VI ¶ 2, and Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    PLAINTIFFS' ALLEGATIONS

National City is a federally chartered bank subject to the National Bank Act, 12 U.S.C. § 21 *et seq.*[1]  In June 2006, plaintiffs allegedly entered into two mortgage loan agreements:  one with World Savings Bank, FSB (the "First Mortgage") and one with National City (the "Second Mortgage").  On February 11, 2008, plaintiffs filed this action in King County Superior Court, bringing suit against the allegedly involved banks, a mortgage broker (Gold Mortgage Lending, LLC, or "Gold Mortgage"), and a "loan originator" who worked for Gold Mortgage (Kathy Mills, or "Mills").  On February 28, the case was removed to this Court.

Plaintiffs' factual allegations are limited to the actions and omissions purportedly attributable to defendants in conjunction with the 2006 mortgage loan agreements.  As against National City, the allegations relate only to the Second Mortgage and, in particular, to the

---

[1] The two National City entities named in the Complaint—National City Mortgage and National City Mortgage Co.—are a division and a wholly owned subsidiary of National City Bank, respectively.  Although plaintiffs on occasion refer to National City Bank by its former name, National City Bank of Indiana, they agree and acknowledge that these relationships exist between the National City defendants.  *See, e.g.*, Compl. ¶¶ 1.6, 1.7.  *See also, e.g.*, *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 954 (9th Cir. 2005) (recognizing that National City Mortgage Co. is a wholly-owned subsidiary of National City Bank of Indiana, and acknowledging that National City Bank of Indiana is a national bank subject to the National Bank Act).  National City Bank, rather than National City Mortgage, is appearing in this action because as a division of National City Bank, National City Mortgage is not a separate corporate entity.

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 1
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

propriety of certain disclosures, fees, and loan terms associated with that mortgage.  Plaintiffs do not allege they had any direct communication with National City.  Rather, plaintiffs claim that all their communications were with the defendant mortgage broker (Gold Mortgage) and its employee (Mills).

Plaintiffs allege five causes of action against National City.  Four are based on Washington state law:  (1) fraud and fraud in the inducement; (2) intentional infliction of emotional distress; (3) breach of fiduciary or quasi-fiduciary duty; and (4) violation of Washington's Consumer Protection Act ("CPA").  The final cause of action asserted against National City is for an alleged violation of the federal Truth-in-Lending Act.[2]

National City respectfully requests an order dismissing all of plaintiffs' state-law claims on the ground of federal preemption and, in the alternative, for failure to state a claim upon which relief may be granted.

### III.     ARGUMENT

**A.     Standard for a Motion to Dismiss**

When adjudicating a motion to dismiss, a court (1) construes the complaint in the light most favorable to the plaintiff; (2) accepts all well-pleaded factual allegations as true; and (3) determines whether the complaint alleges facts sufficient to state a claim for relief that is plausible on its face.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007).

**B.     Plaintiffs' State-Law Claims Are Preempted**

The Court should dismiss plaintiffs' state-law claims on the basis of "field preemption" or "conflict preemption" (or both).  Field preemption bars plaintiffs' state-law claims because federal statutes and regulations occupy the field of national banks' real estate lending practices.

---

[2] Plaintiffs allege that defendants Gold Mortgage and Mills, but not National City, violated the Washington CPA by failing to comply with the Mortgage Broker Practices Act.

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 2
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Conflict preemption independently requires dismissal because the substance of plaintiffs' claims—their attacks on the fees and interest rates imposed and the disclosures made in conjunction with the relevant mortgage agreement—would interfere with the implementation of federal statutes and regulations addressing these same subjects.  Either form of preemption is sufficient for dismissal.

### 1.    A Unique Standard for Preemption Governs Suits Against National Banks

It is well settled that "[b]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable."  *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001-1005 (9th Cir. 2008) (internal quotation marks and citation omitted); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10 (2003) (recognizing "the special nature of federally chartered banks" and emphasizing the need for "protection from possible unfriendly State legislation") (internal quotation marks and citation omitted).  For federally chartered banks such as National City,[3] the statute central to this "extensive federal statutory and regulatory scheme" is the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq. Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005); *see also Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1036 (9th Cir. 2008).  The NBA authorizes federally chartered banks to engage in the business of banking as well as all activities "incidental" to that business. 12 U.S.C. § 24.  Congress, along with the agency charged with promulgating regulations under the NBA (the Office of the Comptroller of the Currency, or "OCC"), has expressly granted national banks authority to make, arrange, and deal in loans secured by interests in real estate. 12 U.S.C. § 371; *see also* 12 C.F.R. § 34.3.

The Ninth Circuit has explained that displacement of state law may occur through three forms of preemption:  express, field, and conflict.  *Silvas*, 514 F.3d at 1004.  Field preemption occurs whenever "federal regulation in a particular field is so pervasive as to make reasonable

---

[3] For purposes of preemption, the two National City parties named in the Complaint (one a division of a federally chartered bank and the other a wholly-owned subsidiary) are both treated as federally chartered banks.  *See Watters v. Wachovia Bank, N.A.*, 550 U.S. ___, 127 S. Ct. 1559, 1564, 1573 (2007).

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 3
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the inference that Congress left no room for the States to supplement it." *Id*. (internal quotation marks omitted). "[T]he mere volume and complexity of federal regulations" can be enough to support this inference. *Id*. The related doctrine of conflict preemption applies whenever "compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. Field and conflict preemption are not "rigidly distinct" categories, *English v. Gen. Elec. Co*., 496 U.S. 72, 79 n.5 (1990), and preemption in any form requires dismissal of the implicated state claims.

In light of these statutes, regulations, and doctrines, any state law that does more than "incidentally affect the exercise of national banks' real estate lending powers" is preempted. 12 C.F.R. § 34.4(b). More generally, state laws that "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a).

### 2. Plaintiffs' Claims Are Barred Because Federal Statutes and Regulations Preempt the Relevant Field

The Complaint attacks the federally authorized real estate lending practices of National City, a federally chartered bank, largely through resort to state law. Yet federal law preempts this field. As a result, there is "no room for the States to supplement it," *Silvas*, 514 F.3d at 1007 n.3 (quoting *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947)), and plaintiffs' state-law claims should be dismissed.

The NBA "specifically authorizes federally chartered banks to engage in real estate lending" as part of the business of banking. *Watters*, 127 S. Ct. at 1564 (citing 12 U.S.C. § 371). The Act also "provides that banks shall have power '[t]o exercise . . . all such incidental powers as shall be necessary'" to carry on their banking business. *Id*. (quoting 12 U.S.C. § 24). The OCC has set forth a complex regulatory regime defining, applying, and otherwise addressing these powers. *See, e.g.*, 12 C.F.R. §§ 5.1 *et seq*. Indeed, a central "purpose" and effect of the

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS (NO. CV 08-00343 RSL) – 4 67804-0001/LEGAL14217301.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

OCC's regulations is "to set forth standards for real estate-related lending and associated activities by national banks."  12 C.F.R. § 34.1(a).

The relevant regulations, too numerous to cite in full, include those addressing the "terms, conditions, and limitations" of real estate loans, 12 C.F.R. § 34.3, the "standards for real estate lending to be used by national banks in adopting internal real estate lending policies," 12 C.F.R. § 34.61, and the imposition of "non-interest charges and fees," 12 C.F.R. § 7.4002. Making clear the preemptive effect of these regulations, the OCC has expressly granted banks the power to make real estate loans without regard to "state law limitations" concerning, among other things, terms of credit; disclosure and advertising; processing, origination, and servicing of mortgages, and rates of interest on loans.  *See* 12 C.F.R. § 34.4(a).  The regulatory regime is complex and comprehensive. [4]

As a result, the NBA and its accompanying regulations preempt whole areas of the law. Courts have repeatedly recognized this result.  *See, e.g.*, *Beneficial Nat'l. Bank*, 539 U.S. at 8 (concluding that the NBA, through "complete pre-emption," "wholly displaced" usury as a state-law cause of action); *Boutris*, 419 F.3d at 967 (concluding that state real estate lending licensing requirements are "field-preempted" by OCC regulations); *Rose*, 513 F.3d at 1038 n.4 (concluding NBA preempts a state's disclosure requirements and refusing even to allow evidentiary inquiry into whether the state law in question constituted a "'significant' impairment or interference with the purposes of the National Bank Act"); *Amalgamated Gadget, L.P. v. Mack*, No. Civ.A. 3:03-CV-0952, 2004 WL 549483 at *5 (N.D. Tex. Feb. 10, 2004) ("The only federal statutes which completely preempt state law are the Labor Management Relations Act,

---

[4] *See also, e.g.*, 12 C.F.R. § 34.62 (requiring that each national bank "adopt and maintain written policies" establishing "appropriate limits and standards for extensions of credit that are secured by liens on or interests in real estate" and setting forth the applicable criteria); 12 C.F.R. § 34.21 (providing that "[a] national bank and its subsidiaries may make, sell, purchase, participate in, or otherwise deal in [adjustable rate mortgage] loans and interests therein without regard to any State law limitations on those activities"); 12 C.F.R. § 7.1004 (allowing a national bank to "use the services of, and compensate persons not employed by, the bank for originating loans").

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 5
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the Employee Retirement [Income] Security Act, and the [NBA].") (citing *Beneficial Nat'l Bank*, 539 U.S. at 2).

The OCC has also acknowledged the NBA's preemptive effect.  After describing a regulation promulgated by the Office of Thrift Supervision ("OTS") as providing "generally that state laws purporting to address the operations of Federal savings associations are preempted," the OCC made the following observation:  "The extent of Federal regulation and supervision of Federal savings associations under the [statute governing federal savings associations] is substantially the same as for national banks under the national banking laws, a fact that warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities."  Bank Activities and Operations; Real Estate Lending and Appraisals, OCC Docket 04-04, 69 Fed. Reg. 1904, 1912 n.62 (Jan. 13, 2004).  *See also* OCC Docket 04-04, 69 Fed. Reg. at 1914 n.74 (confirming that "the preemption regulations adopted by the OCC are substantially identical to the preemption regulations of the OTS").  An agency's interpretation of its own regulations is "controlling."  *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *see also Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 563 n.7 (9th Cir. 2002) (agency's interpretation "entitled to great weight" regardless where it appears) (internal quotation marks and citation omitted).  As the Ninth Circuit has recently confirmed, 12 C.F.R. § 560.2 (the revised version of 12 C.F.R. § 545.2, which was the regulation the OCC singled out as "substantially the same" as its own regulations) results in "field preemption."  *Silvas*, 514 F.3d at 1004.

The authorities cited above do not stand for the proposition that state laws never apply to federally chartered banks.  These laws may apply, but only to the extent that they merely "incidentally" affect the real estate lending practices of federally chartered banks.  *See* 12 C.F.R. § 34.4(a)-(b).  As the Ninth Circuit acknowledged in *Boutris*, "Congress and the OCC, acting pursuant to congressional authority, have left some room for substantive regulation by the states in the field of banking," 419 F.3d at 967, but at the same time have "evidence[d] a desire to

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 6
67804-0001/LEGAL14217301.8

occupy a field completely" with respect to certain practices, *id.* (internal quotation marks and citation omitted).  In general, the type of state law that survives federal preemption is one "that do[es] not attempt to regulate the manner or content of national banks' real estate lending, but that instead form[s] the legal infrastructure that makes it practicable to exercise a permissible federal power. "  Preemption Final Rule, 2004 WL 2360325, at *15 (O.C.C. Mar. 2004).  In short, the "substantive limits of the Bank Act's express preemption provisions do not preclude the possibility of implicit preemption." *Boutris*, 419 F.3d at 965 n.22.  To the contrary, when OCC regulations have established "a comprehensive and finely calibrated scheme" with respect to a given practice, state laws affecting that same practice are field preempted. *Id.* at 966.

In this case, plaintiffs rely on four state-law claims to attack the manner in which National City allegedly conducted its real estate-related lending transactions.  Attacks of this sort directly and unambiguously implicate the field of "real estate-related lending and associated activities."  12 C.F.R. § 34.1(a).  In sum, the Court should dismiss on the basis of field preemption the state-law claims brought against National City.

### 3.    Plaintiffs' Claims Are Also Barred on the Basis of Conflict Preemption

Even if the Court does not dismiss the plaintiffs' state-law claims against National City on the basis of field preemption, it should dismiss them on the basis of conflict preemption. Each of these claims amounts to an attack on the fees and interest rates allegedly charged and/or the disclosures allegedly made or not made in conjunction with the Second Mortgage.  Among the powers granted to national banks is the ability to make real estate loans pursuant to the standards set by federal statute and regulation—not the standards adopted by 50 different states. If permitted to go forward, plaintiffs' application of state law would stand as an obstacle to the full accomplishment and execution of this central tenet of the federal banking regime.

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 7
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

a.     **Plaintiffs' claims—which amount to an attack on fees, interest rates, and disclosures in conjunction with loans—are conflict preempted**

The lawsuit against National City is predicated on three core allegations regarding the Second Mortgage:

- *First*, defendants allegedly "fail[ed] to disclose the terms and conditions of the loan contracts." Compl. ¶ 3.2.  *See also id.* ¶¶ 3.7, 3.9, 3.12 (incorporating this paragraph to apply to all state-law claims).

- *Second*, defendants allegedly misled plaintiffs into entering into the loans for the purpose of obtaining "significant additional fees." *Id.* ¶ 3.3.  *See also id.* ¶¶ 3.7, 3.9, 3.12.

- *Third*, defendants allegedly misled plaintiffs into obtaining loans with "excessive interest rates, excessive loan origination fees, excessive escrow and notary fees, excessive title insurance fees and other excessive, fraudulent and 'junk' fees charged by the other Defendants." *Id.* ¶ 3.4.  *See also id.* ¶¶ 3.7, 3.9, 3.12.

The rest of the Complaint, as it relates to National City, consists either of factual allegations relating to the three core allegations, *see id.* ¶¶ 2.5, 2.6, 2.9, 2.10, 2.11, or conclusory statements summarizing the relevant cause of action, *see id.* ¶¶ 3.5, 3.6 (fraud), ¶ 3.8 (intentional infliction of emotional distress), ¶¶ 3.10, 3.11 (breach of fiduciary duty), ¶¶ 3.13, 3.14(CPA).

To the extent claims of this sort are grounded in state law and lodged against national banks, they cannot survive.  It is not possible for a national bank to fully exercise its federally authorized real estate lending powers and at the same time comply with state statutes regulating the terms, conditions, and disclosures applicable to their mortgage loans.  As explained above, OCC regulations expressly grant national banks the power to "make real estate loans under 12 U.S.C. 371 and Sec. 34.3, *without regard* to state law limitations concerning," among other things, terms of credit; disclosure and advertising; processing, origination, or servicing of mortgages; and rates of interest on loans.  12 C.F.R. § 34.4(a) (emphasis added).  Likewise, subject to certain specific criteria set forth in OCC regulations, national banks have the power to impose non-interest charges and fees.  *See* 12 C.F.R. § 7.4002.  State laws interfering with these

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 8
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

powers "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Silvas*, 514 F.3d at 1004. *See also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). Indeed, application of these state laws would violate the OCC's mandate that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a). As a result, the state laws are conflict preempted. *See Silvas*, 514 F.3d at 1004.

In light of this federal regime, there exists a towering collection of decisions in which courts have found state laws preempted for interfering with the ability of national banks to impose interest and non-interest fees. *See, e.g.*, *Beneficial Nat'l. Bank*, 539 U.S. at 11 (state claims for excessive interest rates preempted); *Rose*, 513 F.3d at 1038 (same, for certain disclosure requirements); *Wells Fargo Bank of Tex. NA v. James*, 321 F.3d 488, 495 (5th Cir. 2003) (same, for check cashing fees); *Bank of Am.*, 309 F.3d at 564 (same, for fees relating to the provision of deposit and lending-related electronic services); *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-03327 RMW, 2007 WL 2213216, at *1 (N.D. Cal. July 31, 2007), (same, for fees allegedly "wrongfully charged and collected"); *Austin v. Provident Bank*, No. Civ.A.4:04 CV 33 P B, 2005 WL 1785285, at *1 (N.D. Miss. July 26, 2005), (same, for excessive interest rates charged and "excessive, improper and fraudulent fees" imposed); *Nat'l City Bank of Ind. v. Turnbaugh*, 367 F. Supp. 2d 805 (D. Md. 2005) (same, for imposition of prepayment fees), *aff'd*, 463 F.3d 325 (4th Cir. 2006); *Bank of Am., N.A. v. Sorrell*, 248 F. Supp. 2d 1196 (N.D. Ga. 2002) (same, for checking-cashing fees); *Metrobank v. Foster*, 193 F. Supp. 2d 1156 (S.D. Iowa 2002) (same, for ATM fees).[5]

---

[5] A similar depth of authority exists with respect to laws regulating the lending practices of federal savings associations (such as defendant Wachovia Mortgage), *see, e.g.*, *Silvas*, 514 F.3d at 1004, and, as explained above, these associations are subject to preemption regulations "substantially identical" to those governing federally chartered banks. OCC Docket 04-04, 69 Fed. Reg. at 1914, n.74.

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 9
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In short, the legal predicates for plaintiffs' state-based claims—that is, their objections to certain fees, rates, and disclosures in conjunction with their mortgage loans—are conflict preempted as applied to National City.

> **b.**    **Plaintiffs cannot avoid preemption through artful pleading**

Plaintiffs cannot circumvent the statutory and regulatory scheme set in place by the NBA and OCC regulations by artful pleading of state-law claims.  As the Ninth Circuit has explained, "[r]egardless of the nature of the state law claim alleged, . . . the proper inquiry is whether the 'legal duty that is the predicate of' Plaintiffs' state law claim falls within the preemptive power of the NBA or regulations promulgated thereunder."  *Rose*, 513 F.3d at 1038 (citation omitted).

This case is quite similar to *Austin v. Provident Bank*, No. Civ.A.4:04 CV 33 P B, 2005 WL 1785285 (N.D. Miss. July 26, 2005), in which the court ruled that plaintiffs' state-law claims against a federally chartered bank were preempted by the NBA.  The court found that the 12 claims, each based on Mississippi law, all revolved around plaintiffs' "basic allegation" that the defendant lender had targeted disadvantaged and vulnerable individuals to enter "overpriced loans at interest rates which were outside the reasonable commercial standards of appropriate risk-based pricing," while "charging excessive, improper and fraudulent fees, including broker fees and other charges and concealing these excessive charges," making false representations, and otherwise violating legal rules and standards.  *Id*. at *1.  The 12 causes of actions, like those in this case, included claims of fraud, intentional infliction of emotional distress, breach of fiduciary duty, and violation of a state CPA.

The defendants removed the case to federal court, arguing that the claims were completely preempted by the NBA.  The court agreed.  The court accepted the defendants' contention that the language in the Complaint, including its reliance on Mississippi common-law doctrines and its CPA, represented "a clever mirage to avoid preemption of the National Bank Act."  *Id*. at *2.  The also court recognized that "the basic nucleus of facts giving rise to the twelve claims asserted in the case at bar," *id*. at 5, amounted to an attack on lending practices

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 10
67804-0001/LEGAL14217301.8

addressed by OCC regulations concerning the rates of interests on loans, disclosures, and similar issues. The court concluded, first, that the complaint's failure to rely on the term "usury" did not change the fact that "it clearly seeks remedies for the charge of excessive interest and fees from national banks in connection with real estate loans"; second, that 12 C.F.R. § 34.4(a)(9), covering disclosures in credit-related documents, preempted "plaintiffs' claims that the defendants procured false, fraudulent, and inaccurate documentation concerning the plaintiffs' mortgage loan applications and that the defendants provided the loan closing attorneys with false and/or misleading data from which the loan documents were prepared"; and, third, that "[t]he plaintiffs' claims of exorbitant fees and expenses in connection with the loans, excessive and improper fees falsely represented to the borrowers, and misrepresentations of costs that the plaintiffs would incur to borrow monies to purchase properties [fell] within the general realm of subsection (a)(4)'s 'terms of credit' provision." *Id.*

In short, while "[t]he wording of the Complaint seems on the surface [to] seek redress under Mississippi contract and tort law—*i.e.*, primarily under fraud," the court recognized that allowing "redress under these state tort and contract laws for the instant claims would not result in an incidental effect upon the exercise of a national bank's real estate lending powers granted by the [NBA]." *Id.* at *6; *see also* 12 C.F.R. § 34.4(b) (providing that laws on torts or contracts apply to national banks only to the extent that they "incidentally affect" the exercise of these powers). "Rather," the court concluded, "such redress would circumvent preemption of the NBA and the aforementioned regulations promulgated by the OCC." *Austin*, 2005 WL 1785285 at *6. As a result, the claims were completely preempted.

A similar logic dictated the outcome in *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-03327 RMW, 2007 WL 2213216 (N.D. Cal. July 31, 2007). The plaintiffs, home mortgage borrowers, alleged the defendant, a federally chartered bank, had "wrongfully charged and collected fees for settlement services related to the refinancing of their home mortgage." *Id.* at *1. The plaintiffs also alleged that the defendant had "overcharge[d] in violation of state and

NATIONAL CITY DEFENDANTS' MOTION TO DISMISS
(NO. CV 08-00343 RSL) – 11
67804-0001/LEGAL14217301.8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

federal laws, misrepresenting the costs of underwriting and tax services, failing to disclose the actual cost of these services and imposing illegally marked up underwriting, tax service and related costs of the mortgage contract." *Id*. at *2. The defendant moved to dismiss the plaintiffs' state-law claims on the basis of federal preemption.

The court found the claims preempted. Acknowledging that "the NBA explicitly confers upon national banks . . . the authority to engage in real estate lending," and that "interest and non-interest charges and fees associated with the business of real estate lending are incidental powers of that authority," the court concluded that if it permitted the plaintiffs to litigate these state-law claims, the court would "essentially be allowing the superimposition of state law requirements upon the OCC's exclusive superintendence of [the defendant's] exercise of its federally-conferred powers." *Id*. at *5. Accordingly, the court dismissed the plaintiffs' state-law claims. The reasoning set forth in *Austin* and *Martinez* applies equally here. Plaintiffs' claims, both in substance and as pleaded, are preempted.

**C.    Even if Plaintiffs' State-Law Claims Were Not Preempted, They Fail to State a Claim Upon Which Relief May Be Granted**

**1.    Plaintiffs' Fraud Claims Fail to Meet Rule 9's Heightened Pleading Standard**

Allegations of fraud cannot survive a motion to dismiss unless the circumstances surrounding the alleged fraud are pleaded with particularity. *See* Fed. R. Civ. P. 9(b); *see also Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). A pleading must identify these circumstances with sufficient clarity to allow a defendant to prepare an adequate answer. *Id*. *See also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("[A]llegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."). This requirement "prevents the filing of a complaint as a pretext for the discovery of unknown wrongs." *Id*. As a result, general or conclusory allegations of fraud are not sufficient. *Moore*, 885 F.2d at 540. *See also Haberman*

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165 (1987) ("CR 9(b), like its federal

counterpart, Fed.R.Civ.P. 9(b), ensures that plaintiffs seek redress for a wrong rather than use

lawsuits as pretexts to discover unknown wrongs, protects defendants from unnecessary harm to

their reputation, and gives defendants sufficient notice to enable them to prepare a defense.").

Under Washington law, the elements of fraud are

> (1) representation of an existing fact, (2) materiality of the fact, (3)
> falsity of the fact, (4) the speaker's knowledge of the falsity of the
> fact, (5) the speaker's intent that the fact should be acted on by the
> person to whom the fact was represented, (6) ignorance of the
> fact's falsity on the part of the person to whom it is represented, (7)
> reliance on the truth of the factual representation, (8) the right of
> the person to rely on the factual representation, and (9) the person's
> consequent damage from the false factual representation.

*Angelo v. Angelo*, 142 Wn. App. 622, 643 (2008) (citing *Sigman v. Stevens-Norton, Inc.*, 70

Wn.2d 915, 920 (1967)).

Plaintiffs' allegations—often in the form of impermissible "group pleading" with

allegations about "defendants" without specifying who did what, when—fall far short of the

threshold set by Rule 9(b).  At the outset, plaintiffs do not allege that National City represented

or misrepresented any fact, much less a material fact.  To the contrary, plaintiffs repeatedly

allege that Mills, on behalf of Gold Mortgage, was the source of all representations made to

them.  Compl. ¶¶ 2.5, 2.6.

As to National City, plaintiffs make only vague reference to its alleged failure to comply

with certain disclosure-related statutes.  Without explanation, plaintiffs also include a cryptic

assertion that National City's loan, though "consistent" with disclosures made by Gold Mortgage,

was "really a 15-year mortgage loan which requires a balloon payment at the end of the 15 years

because the monthly payments will not result in it being paid off."  Compl. ¶ 2.11.  Plaintiffs do

not identify (and certainly do not state with particularity) any statements National City made,

who relied on these statements, and how this caused damage to plaintiffs.  It is, in short, not at all

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

clear what statements (or nondisclosures), if any, form the basis for plaintiffs' fraud claim against National City.

Plaintiffs also fail to allege with particularity whether or how National City would have known of any falsity allegedly contained in the statements made by Gold Mortgage. Yet, as set forth in *Angelo*, knowledge of a representation's falsity is an element required for a fraud claim, and it too must be pleaded with particularity.

Finally, plaintiffs do not plead with particularity how any relevant representation was false. Relying instead on shorthand and financial jargon to imply discrepancies between disclosures by Gold Mortgage and the loan terms, *see* Compl. ¶ 2.11, plaintiffs fail to identify how the disclosures in question were factually incorrect. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) ("To allege fraud with particularity . . . plaintiff must set forth what is false or misleading about a statement, and why it is false.") (superseded by statute on grounds not relevant here); *see also id.* at 1547-48 ("The time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not 'constitute' fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth."); *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (requiring plaintiffs to set forth "specific descriptions of the representations made, [and] the reasons for their falsity").

In short, plaintiffs' allegations, neither clear nor stated with particularity, fail to satisfy the standard set by Rule 9(b).

**2.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails to State a Claim Upon Which Relief May Be Granted**

The Complaint does not contain allegations sufficient to support a claim of intentional infliction of emotional distress. In Washington, the elements of this tort are the same as those for the tort of outrage. *Kloepfel v. Bokor*, 149 Wn.2d 192, 194 n.1 (2003). The basic elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 14
67804-0001/LEGAL14217301.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."
*Dicomes v. State*, 113 Wn.2d 612, 630 (1989) (internal quotation marks and citation omitted).
The conduct in question "must be *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" *Id.* (internal quotation marks and citation omitted). While the question whether "certain conduct is sufficiently outrageous is ordinarily for the jury, . . . it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id. See also id.* at 631 ("[P]laintiff's allegations amount to a showing of bad faith. And even if they rose to the level of malice, . . . no claim of outrage could be stated."). In making the initial determination as to whether the conduct complained of was sufficiently extreme to result in liability, a court considers the following factors: (a) the position occupied by the defendant; (b) whether the plaintiff was peculiarly susceptible to emotional distress, and if the defendant knew this fact; (c) whether the defendant's conduct may have been privileged under the circumstances; (d) whether the degree of emotional distress caused by a party was severe; and (e) whether the party knew that his conduct was highly likely to cause severe emotional distress and nevertheless proceeded in conscious disregard of it. *See Phillips v. Hardwick*, 29 Wn. App. 382, 387-88 (1981).

The conduct alleged by plaintiffs against National City is limited to two general allegations: National City allegedly (1) included certain terms in a mortgage loan agreement and (2) failed to make certain disclosures relating to those terms. Conduct of this sort comes nowhere close to the "extreme and outrageous conduct" required to support a claim for outrage. *See, e.g.*, *Womack v. Von Rardon*, 133 Wn. App. 254, 260-61 (2006) (concluding that "the record [did] not sufficiently establish the required intent or the necessary severity" where defendants used gasoline to set fire to and fatally burn the plaintiff's cat); *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 70-71 (1987) (concluding conduct was not sufficiently outrageous to support an

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

outrage claim where employer repeatedly attempted to reject plaintiff's total-disability claim without providing the pension to which plaintiff was entitled).

To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 127 S. Ct. at 1965.  Plaintiffs' allegations of "extreme and outrageous conduct" fall far short.

### 3. Plaintiffs' Breach of Fiduciary Duty Claim Fails to State a Claim Upon Which Relief May Be Granted

Plaintiffs base their breach of fiduciary duty claim on the unsupported proposition that "Defendants owed a fiduciary duty or quasi-fiduciary duty to Plaintiffs."  Yet "[a]s a general rule, the relationship between a bank and a depositor or customer does not ordinarily impose a fiduciary duty of disclosure upon the bank." *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wn. App. 456, 458-59 (1982); *see also Miller v. U.S. Bank of Washington, N.A.*, 72 Wn. App. 416, 426-27 (1994).  Rather, the two parties "deal at arm's length." *Tokarz*, 33 Wn. App. at 459. While it is true that "special circumstances may dictate otherwise," *id*. (internal quotation marks omitted), the Complaint alleges no fact that would permit a finding of special circumstances in this case.  Washington courts have explained that, at times, "one who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party; and one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts." *Id*.  As alleged in the Complaint, National City had no such relationship with plaintiffs—indeed, it had no interaction with plaintiffs whatsoever. Plaintiffs allege that they dealt exclusively with Mills and Gold Mortgage.  National City was not, therefore, "thrust. . . . into the role of an adviser, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer." *Id*.[6]  Plaintiffs' claim fails for failure to allege otherwise.

---

[6] Notably, in *Tokarz*, the court also affirmed the dismissal of a fraud claim (without a duty to disclose, there was "thus no actionable fraud based on concealment," 33 Wn. App. at 464) and of a CPA claim because Frontier

4.      **Plaintiffs' CPA Claim Fails to State a Claim Upon Which Relief May Be Granted**

Plaintiffs allege a violation of Washington's CPA, RCW 19.86 *et seq*.  This claim fails because the CPA exempts actions or transactions that are "otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of . . . the United States."  RCW 19.86.170.  As set forth above, the NBA and its regulations permit, prohibit, or regulate the transactions alleged by plaintiffs.

In *Miller v. U.S. Bank of Washington, N.A.*, 72 Wn. App. 416 (1994), plaintiffs, customers of the defendant bank, had alleged that the bank's loan collection practices were unfair or deceptive in violation of the CPA.  The Superior Court (Lasnik and Jordan, JJ.) granted summary judgment in favor of the bank, and the Court of Appeals affirmed.  Concluding that the claims were not cognizable, the court cited three supporting principles.  First, the relationship between bank and customer concerning a bank's loan collection practices is "specifically regulated by the Comptroller of the Currency."  *Id*. at 421.  Second, "[g]iven the pervasive federal regulation of the banking system, 15 U.S.C. § 57a's intent to regulate unfair and deceptive practices, and the statutory enforcement function of the Comptroller of the Currency, the Comptroller is uniquely qualified to regulate and resolve disputes arising in the bank-customer relationship."  *Id*. at 422 (footnote omitted).  Finally, given the "pervasive regulatory scheme" governing federal banking, the possibility existed that state court decisions could "conflict with the Comptroller's decisions and regulations."  *Id*.  These factors being met, the court held, it was proper to dismiss plaintiffs' CPA claim.  *Accord Penner v. Chase Bank USA, N.A.*, No. C06-5092, 2006 WL 2192435, at *1, *5 (W.D. Wash. Aug. 1, 2006) (finding plaintiffs' CPA claim, involving allegations that a nationally chartered bank "engage[d] in a practice of increasing interest rates retroactively, without giving advance notice, violating the Truth in

Federal Savings & Loan Association was "exclusively governed by federal laws and regulations" issued by the Federal Home Loan Bank Board.  *Id*.

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 17
67804-0001/LEGAL14217301.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Lending Act (TILA), the Cardmember Agreement, and state contract and consumer protection laws," to be "subject to dismissal for the reasons set forth in *Miller*").

### IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice each of the following state-law causes of action against National City:  (1) fraud and fraud in the inducement; (2) intentional infliction of emotional distress; (3) breach of fiduciary or quasi-fiduciary duty; and (4) violation of Washington's Consumer Protection Act.

DATED:  May 1, 2008

s/ Kathleen M. O'Sullivan, WSBA No. 27850
Kathleen M. O'Sullivan
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail:  KOSullivan@perkinscoie.com

Attorneys for Defendants
National City Bank, f/k/a National City Bank
of Indiana, and National City Mortgage
Company

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 18
67804-0001/LEGAL14217301.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**CERTIFICATE OF SERVICE**

I certify that on May 1, 2008, I electronically filed the foregoing Motion To Dismiss State-Law Claims with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record.

Melissa A. Huelsman
Law Offices of Melissa A Huelsman
705 Second Avenue, Suite 501
Seattle, WA  98104-1715
*Mhuelsman@predatorylendinglaw.com*
Attorneys for Plaintiffs

Robert Joseph Bocko
Nicolas J. Vikstrom
Keesal Young & Logan
1301 5th Avenue, Suite 1515
Seattle, WA 98101
*robert.bocko@kyl.com*
*nick.vikstrom@kyl.com*
Attorneys for Defendants World Savings
and Loan Association n/k/a Wachovia
Mortgage, FSB and Wachovia Corporation

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 1st day of May, 2008.

s/ Kathleen M. O'Sullivan, WSBA No. 27850
Kathleen M. O'Sullivan
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Fax:  206.359.9000
E-mail:  KOSullivan@perkinscoie.com

Attorneys for Defendants
National City Bank, f/k/a National City Bank
of Indiana, and National City Mortgage
Company

NATIONAL CITY DEFENDANTS' MOTION TO
DISMISS
(NO. CV 08-00343 RSL) – 19
67804-0001/LEGAL14217301.8