UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
PATRICK FULTZ, *et al.*,           )
                                    )
                    Plaintiffs,    )   Case No. C08-0343RSL
                                    )
        v.                          )
                                    )   ORDER GRANTING WACHOVIA'S
WORLD SAVINGS AND LOAN              )   MOTION TO DISMISS PLAINTIFFS'
ASSOCIATION, *et al.*,              )   STATE LAW CLAIMS
                                    )
                    Defendants.    )
_____)

This matter comes before the Court on a motion to dismiss filed by defendants World Savings and Loan Association (n/k/a Wachovia Mortgage, FSB) and Wachovia Corporation (collectively referred to as "Wachovia"). Wachovia argues that relief cannot be granted on any of plaintiffs' state law claims because the claims are preempted by the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461 *et seq.*, and the federal regulations promulgated thereunder. Having reviewed the allegations of the complaint in the light most favorable to plaintiffs (In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000)), the Court agrees.

Plaintiffs allege that defendants violated state and federal law in connection with two home mortgage loans made in February 2006. According to plaintiffs, defendants misstated the true costs and terms of the mortgages and failed to provide loan documentation in a timely manner. Based on these allegations, plaintiffs assert a federal claim under the Truth-in-Lending

ORDER GRANTING WACHOVIA'S
MOTION TO DISMISS STATE LAW CLAIMS

Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and state law claims of fraud and fraud-in-the-inducement, intentional infliction of emotional distress, breach of fiduciary duty, and unfair practices under the Washington Consumer Protection Act, RCW 19.86 *et seq.* Wachovia, a federally-chartered savings association, seeks dismissal of the state law claims.

The Court must determine whether the regulations issued by the Office of Thrift Supervision ("OTS") bar plaintiffs' state law claims. OTS was created by Congress to provide for the safe and sound operation of federal savings associations through regulation. In order to give federal savings associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," OTS promulgated 12 C.F.R. § 560.2, which states:

> OTS hereby occupies the entire field of lending regulation for federal savings associations . . . Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). OTS provided a list, categorized by the object of regulation, of state laws that are preempted, including any laws purporting to impose requirements regarding disclosures in loan applications or credit-related documents. 12 C.F.R. § 560.2(b)(9). OTS did not, however, intend to preempt state laws of general applicability that have only an incidental effect on the lending operations of federal savings associations. 12 C.F.R. § 560.2(c).

Whether a state law claim against a federal savings association is preempted involves a multi-step analysis.

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be

ORDER GRANTING WACHOVIA'S
MOTION TO DISMISS STATE LAW CLAIMS     -2-

resolved in favor of preemption.

61 Fed. Reg. at 50,966-67. Using this framework, if the court finds that the object of a state law is to regulate the relationship between federal savings associations and borrowers, the law will be automatically preempted under § 560.2(b). If, on the other hand, the law is one of general applicability and plaintiff is attempting to use the statute to impose requirements on the association's banking-related conduct, the court must evaluate the state law under § 560.2(c). See OTS Legal Opinion at 7-10 (Dec. 24, 1996), available at http://www.ots.treas.gov/docs/5/56615.pdf; Haehl v. Wash. Mutual Bank, F.A., 277 F. Supp.2d 933, 942-43 (S.D. Ind. 2003).

Applying the § 560.2 framework to particular state laws has proved difficult for both the courts and OTS. In a recent decision, Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2007), the Ninth Circuit conflated the analysis. The Silvas court reviewed a general statute precluding unfair competition that had no textual or explicit relationship to the regulation of banks. The court evaluated the facts alleged by plaintiff, rather than the law itself, and concluded that because the claims involved conduct listed in § 560.2(b), the law was preempted under that paragraph. Opinions generated by OTS suggest, however, that paragraph (b) preemption applies only where the state law has as its object the regulation of banking-related conduct: if not, paragraph (c) comes into play. See OTS Legal Opinion at 9-10 (Dec. 24, 1996); OTS Legal Opinion at 12 (Mar. 10, 1999), available at http://www.ots.treas.gov/docs/5/56903.pdf.[1] The end result may be the same, as the Silvas court noted in footnote 3, but the nature of the analysis differs under the two paragraphs.

Turning first to paragraph (b), the Court finds that none of the state common law or statutory claims asserted by plaintiffs is directly aimed at federal savings associations or

---

[1] Because this interpretation comports with the regulatory language and the preamble to § 560.2, the Court finds the opinions of OTS' Chief Counsel persuasive authority on this point. See Christensen v. Harris County, 529 U.S. 576, 587 (2000) (agency interpretations contained in opinion letters are entitled to respect only to the extent that they are persuasive).

ORDER GRANTING WACHOVIA'S
MOTION TO DISMISS STATE LAW CLAIMS    -3-

lenders in general. The question, therefore, is whether, under paragraph (c), the state laws are being used by plaintiffs "as a vehicle to improperly impose requirements on the [a]ssociations' lending operations regarding matters that have traditionally been within the exclusive purview of the OTS and federal law." OTS Legal Opinion at 12 (Mar. 10, 1999).

When OTS was first asked to opine on the preemptive reach of § 560.2(c), it underestimated the havoc that could be wrought by state laws of general applicability when applied to federally-regulated thrifts. In 1996, OTS recognized that a state law precluding deceptive and unfair business practices could affect lending relationships, but concluded that:

> the impact on lending appears to be only incidental to the primary purpose of the statute – the regulation of the ethical practices of all businesses engaged in commerce in Indiana. There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings associations, the best practices of thrift institutions in the United States, or any other federal objective identified in § 560.2(a). In fact, because federal thrifts are presumed to interact with their borrowers in a truthful manner, Indiana's general prohibition on deception should have no measurable impact on their lending operations. Accordingly, we conclude that the Indiana DAP is not preempted by federal law.

OTS Legal Opinion at 10 (Dec. 24, 1996). This analysis focused on the intent of the legislature in enacting the statute and a fairly superficial review of conflicts that could arise with the federal regulatory scheme. OTS ignored the very real risk that different states could consider different practices "unfair" or "fraudulent" or "deceptive," thereby subjecting federal savings associations to multiple, sometimes conflicting, regulatory schemes. This risk was presented to OTS as reality a few years later when the California Unfair Competition Act ("UCA") was brought to its attention. Despite the general nature of the statute, prosecutors and private litigants had attempted to use the law "to set substantive standards" regarding loan disclosures and fees. Such activities are defined as integral components of lending operations in paragraph (b), and OTS recognized that the proliferation of state regulations on this topic would interfere with the

ORDER GRANTING WACHOVIA'S
MOTION TO DISMISS STATE LAW CLAIMS     -4-

uniform federal scheme. OTS ultimately concluded that the use of the UCA to impose requirements related to loan disclosures and fees "(i) has more than an incidental effect on a federal thrift's lending operations and (ii) is inconsistent with the purposes of § 560.2(a)." OTS Legal Opinion at 13-14 (Mar. 10, 1999).[2]

The Court finds that the same analysis and conclusion apply to plaintiffs' state law claims. Plaintiffs' fraud, emotional distress, fiduciary duty, and Consumer Protection Act claims are all based on Wachovia's alleged failure to provide timely and meaningful disclosure of the costs and terms of their loans. Savings associations are subject to federal disclosure requirements, including those set forth in the Truth-in-Lending Act and its regulations. OTS has already concluded that a state law that expressly imposes disclosure requirements in credit-related documents would undermine the purposes of § 560.2(a) and is therefore subject to automatic preemption under § 560.2(b)(9). Through this litigation, plaintiffs seek to use state laws of general applicability to accomplish the same result. To the extent plaintiffs are attempting to require a particular disclosure at a particular time and in a particular manner, federal law governs their claim. Permitting state common law and statutory causes of action to proceed without regard to, and unlimited by, the existing federal scheme of regulations would undermine the purposes set forth in § 560.2(a). Preemption under § 560.2(c) is therefore appropriate.

Without referring to the governing preemption regulation, plaintiffs argue that their state law claims are not preempted because (a) TILA preempts only those state laws that are actually inconsistent with the statute and (b) their state law claims are based solely on defendants' violations of TILA and therefore complement, rather than interfere with, the federal

---

[2] This 1999 OTS opinion was not discussed or cited in one of the cases on which plaintiffs rely for their narrow construction of § 560.2. Because it ignored one of the few agency statements regarding the application of the preemption provision, the Court does not find In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491 F.3d 638 (7th Cir. 2007), particularly persuasive.

ORDER GRANTING WACHOVIA'S
MOTION TO DISMISS STATE LAW CLAIMS    -5-

regulatory scheme. Neither argument is persuasive. TILA's preemption provision tells us only what state laws are preempted by TILA: it "does not trump HOLA and OTS regulations." Silvas, 514 F.3d at 1007. Despite plaintiffs' representations to the contrary, the factual allegations offered in support of their state law claims are not expressly or impliedly limited to TILA violations. Plaintiffs' fraud claim, for example, is broadly written and contains no reference to TILA. The fraud claim presumably incorporates judicial interpretations of the terms "mislead, deceive, and defraud," which may be broad enough to result in a favorable verdict on the fraud claim regardless of whether TILA was violated. Even when read in the light most favorable to plaintiffs, their state law claims cannot withstand the preemption analysis of § 560.2.

For all of the foregoing reasons, defendants' motion to dismiss plaintiffs' state law claims against World Savings and Loan Association (n/k/a Wachovia Mortgage, FSB) and Wachovia Corporation is GRANTED.

Dated this 18th day of August, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge